UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSEPH L. S. C.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CASE NO. 3:26-CV-5029-DWC

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION DENYING BENEFITS

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of Defendant's denial of his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB").[1] The Court concludes that the ALJ erred in evaluating Plaintiff's subjective symptom testimony. Had the ALJ properly considered this testimony, Plaintiff's RFC may have included additional limitations, or the ultimate determination of disability as to the closed period may have changed. The ALJ's error, therefore, is not harmless, and this matter is

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. *See* Dkt. 3.

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

## I. Procedural History

Plaintiff filed his application ("2015 application") for SSI on December 20, 2015, alleging disability as of December 1, 2015. Administrative Record ("AR") 1595–96. His claim was denied initially on March 30, 2016, and upon reconsideration on July 19, 2016. AR 1595, 1606. A hearing was held before ALJ Gerald Hill on August 29, 2017, who issued a decision ("2018 decision") denying Plaintiff's claim on January 29, 2018. AR 1521–33. The Appeals Council denied Plaintiff's request for review on May 29, 2019, making the 2018 decision the Commissioner's final decision subject to judicial review. AR 1. Plaintiff then filed a complaint with the Western District of Washington on August 5, 2019, seeking judicial review of the 2018 decision. AR 2138.

On May 26, 2020, United States Magistrate Judge Michelle L. Peterson entered an order affirming the Commissioner's 2018 decision. AR 2169–70. Plaintiff, in turn, filed notice of appeal with the United States Court of Appeals for the Ninth Circuit on July 27, 2020. AR 2141. On June 25, 2021, the Ninth Circuit vacated the district court's order that affirmed the 2018 decision, and remanded the matter "to the agency for further proceedings consistent with the United States Supreme Court's holding in *Carr v. Saul*, 141 S. Ct. 1352 (2021)." AR 2151.[2] The

[2] In *Carr v. Saul*, the United States Supreme Court held that, in raising an Appointments Clause challenge to an ALJ's appointment under the United States Constitution, "claimants are not required to exhaust [Appointments Clause challenges] in administrative proceedings to preserve them for judicial review, claimants who raise those issues for the first time in federal court are not untimely in doing so." *Carr v. Saul*, 593 U.S. 83, 95, 141 S. Ct. 1352, 1362 (2021).

United States District Court for the Western District of Washington, in turn, remanded the 2018 decision on June 29, 2021. AR 2139.[3]

The consolidated applications came on for another hearing before ALJ David Johnson ("the ALJ") on September 27, 2022. AR 2078. On November 23, 2022, the ALJ entered a decision ("2022 decision") concluding that Plaintiff was not disabled. AR 2040. Plaintiff then appealed the ALJ's 2022 decision to the United States District Court for the Western District of Washington, and by order entered May 22, 2024, United States Magistrate Judge S. Kate Vaughan entered an order reversing and remanding the ALJ's 2022 decision. AR 5117. On October 31, 2024, the Appeals Council remanded the matter for further proceedings. AR 5124.

The matter came on for yet another hearing on August 26, 2025, and by order entered September 15, 2025, the ALJ entered a decision ("2025 decision"), concluding that Plaintiff was not disabled from December 1, 2015, to January 31, 2018, but was disabled as of February 1, 2018. AR 4987–5012. From this decision, Plaintiff filed another complaint with the United States District Court for the Western District of Washington on January 14, 2026, seeking judicial review of the ALJ's 2025 decision. Dkt. 6.

## II. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or are not supported by

[3] While Plaintiff's appeal of the 2018 decision was pending before the Ninth Circuit Court of Appeals, Plaintiff filed a separate protective filing ("2019 application") on July 11, 2019, alleging disability as of January 29, 2018. AR 2460–62. The 2019 application was denied initially on September 12, 2019, and upon reconsideration on January 6, 2020. AR 2229, 2243. On May 26, 2021, ALJ Cynthia D. Rosa held a hearing to consider Plaintiff's 2019 application, and on July 26, 2021, ALJ Rosa entered a decision concluding that Plaintiff was not disabled. AR 2048, 2188. In January 2022, the Appeals Council took "own motion review of the case," concluded that the Ninth Circuit's remand of the 2015 application "makes the subsequent [2019 application] duplicative[,]" and consolidated the two applications, instructing the ALJ, on remand, to "issue a new decision on the consolidated claims." AR 2196–97, 2298–99.

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [they] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

"[H]armless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a). Generally, an error is harmless if it is not prejudicial to the claimant and is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115.

**III. Discussion**

Plaintiff argues that the ALJ erred in evaluating: (1) certain medical opinion evidence; (2) Plaintiff's subjective symptom testimony; (3) the lay witness evidence; (4) Plaintiff's RFC; and (5) that these errors warrant an award of benefits. Dkt. 13 at 2.

A. <u>Medical Opinion Evidence</u>

First, Plaintiff argues that the ALJ erred in evaluating certain medical opinion evidence. Dkt. 13 at 4–11.

Applications filed before March 27, 2017, are governed by the previous regulatory scheme for evaluating medical opinion evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised [post-March 27, 2017,] social security regulations are clearly irreconcilable with our caselaw according special deference to the

opinions of treating and examining physicians on account of their relationship with the claimant.”).[4]

Under the pre-2017 regulations, an ALJ must provide “clear and convincing” reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citation omitted). When a treating or examining physician’s opinion is contradicted, the opinion can be rejected “for specific and legitimate reasons that are supported by substantial evidence in the record.” *Id.* at 830–31. The ALJ can accomplish this by “setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.” *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

*i. Dr. Wingate*

First, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence offered by examining physician, Dr. Wingate. Dkt. 13 at 4.

Dr. Wingate conducted a Psychological/Psychiatric Evaluation of Plaintiff on January 25, 2016. AR 1912. In Dr. Wingate’s opinion, Plaintiff had “moderate” limitations in his ability to: understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; ask simple questions or request assistance; communicate and perform effectively in a work setting; maintain appropriate behavior in a work

[4] Plaintiff filed his applications in 2015 and 2019. AR 1595, 2460. In these instances, where “one claim is open when another new claim is filed[,]” the SSA’s Program Operations Manual System (POMS) instructs an ALJ to “use the earliest possible filing date of the claims to determine which set of rules to follow.” *See* SSA POMS DI 24503.050.D.2.a. Therefore, the ALJ was correct to apply the pre-2017 medical opinion regulations to Plaintiff’s claim. *See also Vela v. Kijakazi*, 2023 WL 8592873, at *1 n.1 (9th Cir. Dec. 12, 2023) (“Even though [the plaintiff] filed her application for [DIB] after [March 27, 2017], Sections 404.1527 and 416.927 still apply because the agency uses the earlier application ([the plaintiff]’s [SSI] application) to determine which medical evidence regulations apply.”) (citing SSA POMS DI 24503.050.D.2.a).

setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 1914.

The ALJ gave "[s]ignificant weight" to Dr. Wingate's opinion because it was "consistent with her observations of [Plaintiff] and his performance on mental status exam tasks." AR 5001. Plaintiff argues that the ALJ erred in evaluating Dr. Wingate's opinion because "[t]he ALJ states that he is giving '[s]ignificant weight' to Dr. Wingate's opinion . . . [b]ut the ALJ's residual functional capacity assessment does not fully account for all of the significant limitations described by Dr. Wingate[,] . . . [and t]his is harmful legal error." Dkt. 13 at 5.

In making this argument, however, Plaintiff does not identify *any* limitations opined by Dr. Wingate that are not contemplated by Plaintiff's RFC; Plaintiff does not articulate how his RFC may have changed had the ALJ properly included *all* "moderate" limitations opined by Dr. Wingate, nor does he contend that the determination of disability would have changed had the ALJ properly considered Dr. Wingate's opinion evidence. *See id.* In other words, Plaintiff does not meaningfully assert that the ALJ has committed harmful error in considering Dr. Wingate's opinion—beyond his conclusory assertion that "not fully account[ing] for all of the significant limitations . . . is harmful legal error." *Id.*[5]

[5] In the previous appeal in this matter, Judge Vaughan noted that, "[i]n challenging the ALJ's evaluation of the medical opinions regarding his mental impairments, Plaintiff failed to adequately develop his arguments, address the record evidence specifically cited and relied upon by the ALJ, support his conclusory assertions, and/or to address the multiple pertinent findings advanced by the ALJ." *Joseph L. S. C. v. Comm'r of Soc. Sec.*, No. C23-5246-SKV, 2024 WL 4471778, at *3 (W.D. Wash. May 22, 2024); *see also* AR 5087. Ultimately, "Plaintiff's counsel [wa]s again advised that his general failure to adequately develop arguments may prejudice his client, resulting in less favorable relief on appeal than that which may have been warranted had Plaintiff's counsel simply advanced his client's arguments in sufficient detail." *Id.*, at *4; *see also* AR 5090. On remand, Judge Vaughan, nonetheless, instructed the ALJ to "reconsider the weight afforded to Dr. Wingate's 2016 opinion, and in doing so, specifically address whether the timing of Dr. Wingate's opinion affects the weight that it should be given." *Id.*, at *14; *see also* AR 5109. Once again, on appeal, Plaintiff's counsel has failed to adequately develop his arguments regarding Dr. Wingate's medical opinion evidence with sufficient detail, and "[t]he Court declines to make Plaintiff's argument for him." *Id.*

For this reason, the Court concludes that the ALJ did not harmfully err in evaluating Dr. Wingate's medical opinion evidence.

*ii. Dr. Budwey*

Next, Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence offered by Dr. Budwey. *Id.* at 5–6.

Dr. Budwey submitted a "Confidential Psychology Report" based upon examinations conducted on February 7, 2017, and February 17, 2017. AR 1951. The ALJ gave "[p]artial weight . . . to [Dr. Budwey's] recommendations because they are well supported by her thorough exam findings[,]" but concluded that "little weight is given to any inference from these recommendations that [Plaintiff] is only capable of part time work or that [Dr. Budwey's] recommended strategies for improving [Plaintiff's] attention and concentration translate to work related restrictions." AR 5002.

Nonetheless, in the previous appeal in this matter, Judge Vaughan concluded that "the ALJ also reasonably found that Dr. Budwey was not assessing the most Plaintiff could do in terms of his work capabilities[,]" and Plaintiff "fail[ed] to address this reason." *Joseph L. S. C.*, 2024 WL 4471778, at *15; *see also* AR 5111. Based upon "the adequate, unchallenged reason, the Court decline[d] to find any error in the ALJ's evaluation of Dr. Budwey's opinion." *Id.*

"[T]he law of the case doctrine and the rule of mandate apply to social security remands from federal court in the same way they would apply to any other case." *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). "The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case." *Id.* at 567. "The doctrine is concerned primarily with efficiency, and should not be

applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Id.*

Here, the Court declines to consider Plaintiff' cursory argument regarding Dr. Budwey's medical opinion evidence because Dr. Budwey's medical opinion evidence is not substantially different on remand, the controlling law has not changed, and applying the doctrine would not be unjust.[6] For these reasons, the Court declines to reconsider Judge Vaughan's determination that the ALJ did not err in evaluating Dr. Budwey's medical opinion evidence.

*iii. Dr. Wilkinson*

Finally, Plaintiff argues that the ALJ erred in evaluating Dr. Wilkinson's medical opinions. Dkt. 13 at 9.

Dr. Wilkinson conducted Psychological/Psychiatric Evaluations of Plaintiff on November 28, 2018, and December 2, 2019. AR 2974, 3104. In both of Dr. Wilkinson's opinions, Plaintiff had "marked" limitations in his ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; maintain appropriate behavior in a work setting; and complete a normal work day and work week without interruptions from psychologically based symptoms. AR 2976, 3106. In turn, Dr. Wilkinson opined that Plaintiff had an overall severity rating of "marked." *Id.*

The ALJ gave Dr. Wilkinson's opinions "significant weight" because they were "consistent with the overall evidence of record since February 2018 showing a continuing decline in [Plaintiff]'s mental functioning and ongoing psychiatric hospitalizations with no long

---

[6] On appeal, Plaintiff, once again, summarily asserts that "the ALJ's residual functional capacity assessment does not *fully* account for Dr. Budwey's findings and opinion[,]" Dkt. 13 at 6 (emphasis in original), but, *once again*, Plaintiff, or rather, Plaintiff's counsel, does not identify any limitations opined by Dr. Budwey that were absent from Plaintiff's RFC, nor does he assert that the determination of disability would have changed had the ALJ "fully account[ed]" for Dr. Budwey's findings and opinion. *Id.* Plaintiff has not asserted harmful error in evaluating Dr. Budwey's medical opinion evidence. *Id* at 6–7.

term stability" and with "the marked limitations [Plaintiff] has at other examinations since the established onset date [of February 1, 2018]." AR 5010–11. The Court observes that the ALJ found Plaintiff disabled as of February 1, 2018, due to, *inter alia*, Dr. Wilkinson's opinion. *Id.*

Nonetheless, Plaintiff asserts that "[w]hile this medical evidence is dated eleven months after the end of the relevant period, it reflects the longitudinal symptoms and limitations that [Plaintiff] was also experiencing during the relevant period [from December 1, 2015, to February 1, 2018]." Dkt. 13 at 10. Although a reasonable inference may be drawn that medical evidence submitted eleven months after the closed period *may* "reflect[ ] the longitudinal symptoms and limitations" that Plaintiff was experiencing during the closed period—the opposite conclusion is equally reasonable—this evidence *may not* "reflect[ ] the longitudinal symptoms and limitations" that Plaintiff was experiencing during the closed period *because* it was "dated eleven months after the end of the relevant period[.]" *Id.*

In situations, such as this, where "the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citation omitted). For this reason, the Court concludes that the ALJ did not harmfully err in concluding that Dr. Wilkinson's opined "marked" limitations in November 2018 did not necessarily reflect Plaintiff's functioning during the closed period from December 1, 2015, until February 1, 2018.

B. <u>Subjective Symptom Testimony</u>

Next, Plaintiff argues that the ALJ erred in evaluating his subjective symptom testimony. Dkt. 13 at 11–14.

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th

Cir. 2021) (citation omitted). The first step requires an ALJ to determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (citation omitted). This objective medical evidence does not have to corroborate the severity of the alleged symptoms, rather, "the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.*

If a claimant has satisfied the first step, and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.* at 1112 (citation omitted). The specific, clear, and convincing standard, however, is "the most demanding [standard] required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). As with all findings by the ALJ, however, the specific, clear, and convincing reasons for rejecting the claimant's testimony about the severity of their symptoms must also be supported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Bayliss*, 427 F.3d at 1214 n.1.

At his hearing on August 29, 2017, toward the end of the closed period, AR 2481, Plaintiff testified, *inter alia*, that he has "bipolar disorder. I - - at its worst, I fade in and out of reality, completely lose touch[,] . . . a lot of hallucinations, delusions, all sorts of stuff." AR 2494. He testified that "one of the delusions was that I was making [my condition] up. So, I was saying all sorts of crazy stuff. And that's my bipolar disorder at its worst. At its best, severe depression pretty much all the time. Suicidal thoughts all the time[.]" *Id.* Furthermore, that "I have ADHD so it's very hard for me to concentrate for more than a few seconds, you know, very traditional ADHD. I start tasks, it's hard for me to finish them [without] starting a new task[,]

and another task[,] and another task[,] before finishing the first task." *Id.* Finally, Plaintiff testified "I get panic attacks if I work full-time. If I'm working part-time, I get so upset with everybody and just can't handle working there that I kind of just . . . retreat." AR 2496.

The ALJ found that Plaintiff's severe impairments could reasonably be expected to produce some of the alleged symptoms and did not make an explicit malingering finding. AR 4996. The ALJ, therefore, was required to offer specific, clear, and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Smartt*, 14 F.4th at 1112.

Here, the ALJ sought to do so based upon inconsistencies within the record, Plaintiff's activities of daily living, and other evidence in the record.[7] These are proper bases for an ALJ to discount a claimant's subjective symptom testimony. *See* SSR 16-3p, 2017 WL 5180304, at *8 (noting that "[t]he type, dosage, effectiveness, and side effects of any medication" are factors to consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms); *Carmickle v. Comm'r. Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (holding that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony"); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) (concluding that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse" subjective symptom determination).

---

[7] The ALJ also discounted Plaintiff's testimony based upon evidence that Plaintiff's "stated that he orchestrated the manic episode [which resulted in his December 2016 hospitalization] in order to get disability" and "ha[d] no problem being a layabout" but "realizes his grandma will pass away eventually and he will need to support himself in some way." AR 4998, 2015. Without explicitly making a finding of malingering, the ALJ, nonetheless, discounted Plaintiff's subjective symptom testimony based upon this evidence. AR 4998–99. In the previous appeal in this matter, however, when considering this same evidence, Judge Vaughan observed that *after* these "cited 2017 statements, Plaintiff experienced additional periods of severe decompensation, manic episodes, and psychiatric hospitalizations, which were themselves deemed by inpatient psychiatric hospitals and facilities necessary because Plaintiff was a danger to others and suffered from a 'grave disability.'" AR 5103. In turn, Judge Vaughan concluded that "the ALJ's suggestion that Plaintiff's mental illness symptoms could be explained away by his orchestration or desire for secondary gain—as opposed to legitimate mental illness—is not supported by substantial evidence in the longitudinal record." AR 5103–04. The Court agrees, and for this reason, concludes that these findings do not provide substantial evidence sufficient to discount Plaintiff's subjective symptom testimony.

i. *Inconsistencies with the Record*

First, the ALJ found that Plaintiff "provided inconsistent reports to the doctors about his medication use[,]" reporting to Dr. Wingate in January 2016 that he was taking medication, but reporting to another doctor, Dr. Wagonblast, in March 2016, that he "stopped taking his prescriptions 'months ago.'" AR 4997.

Plaintiff argues that "[a]t his hearings, [he] provided testimony describing his symptoms, and explain[ed] why he was unable to perform any type of full-time work on a sustained basis between December 2015 and January 2018" while also noting "that [Plaintiff] has often shown poor judgment in complying with taking prescribed medication." Dkt. 13 at 12, 14. The Court agrees with Plaintiff's contention that he "has often shown poor judgment in complying with taking prescribed medication[,]" *id.*, and observes that, in the ALJ's words, Plaintiff's "mental health condition may contribute to his treatment noncompliance." AR 4999.

Nonetheless, the Court observes that Plaintiff's testimony during the closed period, in August 2017, itself, is not inconsistent with this evidence of inconsistent statements to providers. *Cf.* AR 1868, 1875, 1912, 2494. Plaintiff fully acknowledged at this hearing that he "was saying all sorts of crazy stuff. And that's [his] bipolar disorder at its worst." AR 2494. Although Plaintiff made inconsistent statements regarding his medication compliance to Drs. Wingate and Wagonblast in early-2016—in the context of *this particular* record—these inconsistent statements *are consistent* with the longitudinal record, wherein, again, Plaintiff "was saying all sorts of crazy stuff." *Id.*

Indeed, as Judge Vaughan observed in the previous appeal in this matter, "the longitudinal record here contains an abundance of evidence demonstrating that Plaintiff often made delusional statements and offered grandiose representations regarding his intelligence,

intentions, and schemes—sometimes even during routine medical appointments and/or periods of non-decompensation." AR 5103. For this reason, the Court concludes that, in this particular case, the ALJ erred in discounting Plaintiff's subjective symptom testimony based upon his inconsistent statements regarding his medication compliance to Drs. Wingate and Wagonblast.[8]

*ii. Activities of Daily Living*

Alternatively, the ALJ found that Plaintiff's testimony that "it is very hard to concentrate for more than a few seconds and it is hard to finish tasks" was inconsistent with his activities of daily living, in that Plaintiff "could drive, clean, pay bills, and shop. He read, watched television and played video games 'a normal amount of time and [Plaintiff is] fairly good at them.'" AR 4998.

Plaintiff argues that his activities are consistent with his testimony. Dkt 17 at 4. The Court agrees with Plaintiff. Here, the ALJ noted that Plaintiff testified "that it is very hard to concentrate for more than a few seconds and it is hard to finish tasks[,]" but discounted Plaintiff's testimony based upon the aforementioned activities, which, according to the ALJ, indicate Plaintiff could "concentrate for more than a few seconds." AR 4998. The Court, however, observes that Plaintiff did not testify that it was *impossible*, or in the ALJ's words—Plaintiff experienced an "inability" to concentrate for more than a few seconds during this period—but that it was "very hard" to do so. *Cf.* AR 2495, 4998. These statements are not inconsistent with one another.

---

[8] The ALJ also found inconsistencies between Plaintiff's "report that he finished what he started, and could pay attention 'below average,' which suggests some deficit but not an inability to pay attention for more than a few seconds as suggested by his testimony." AR 4998. The Court observes that this evidence is not inconsistent with Plaintiff's hearing testimony that he has "ADHD so it's very hard for me to concentrate for more than a few seconds, you know, very traditional ADHD. I start tasks, it's hard for me to finish them [without] starting a new task[,] and another task[,] and another task[,] before finishing the first task." *Id.*; AR 2494. 4998.

Moreover, in the context of mental health impairments, our Courts have long observed the "critical differences between activities of daily living and activities in a full-time job [including] that a person has more flexibility in scheduling the former than the latter, can get help from other persons[,] and is not held to a minimum standard of performance, as [the claimant] would be by an employer." *Garrison*, 759 F.3d at 1016 (ellipses and citation omitted). Our Courts have "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities does not in any way detract from [their] credibility as to [their] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ellipsis and citation omitted). While "daily activities may be grounds for an adverse credibility finding[,] if a claimant is able to spend a substantial part of [their] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"; nonetheless, "[t]he ALJ must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (internal quotation marks, brackets, and citations omitted).

Here, the ALJ does not make specific findings as to how the cited activities demonstrate that Plaintiff "is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id.*; *see* AR 4998. An ALJ has a duty to "set forth" their reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Michael D. v. Comm'r of Soc. Sec.*, No. 2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (citation omitted). Here, the ALJ has not done so, and for this reason, the Court concludes that the ALJ

erred in discounting Plaintiff's subjective symptom testimony based upon his activities of daily living.

In sum, the Court concludes that the ALJ erred in evaluating Plaintiff's subjective symptom testimony as it pertains to the closed period from December 1, 2015, to February 1, 2018, based upon the aforementioned grounds. Applying the harmless error analysis, the Court concludes that the ALJ committed harmful error in evaluating Plaintiff's subjective symptom testimony because, had the ALJ properly considered this testimony, Plaintiff's RFC for the closed period may have contained additional limitations, or the ultimate determination of disability may have changed. The ALJ's error, therefore, is not harmless.

C. Lay Witness Evidence

Next, Plaintiff argues that the ALJ erred in evaluating the lay witness evidence offered by Plaintiff's grandmother. Dkt. 13 at 14–17. Nonetheless, having found reversible error in the evaluation of Plaintiff's subjective symptom testimony, the Court need not consider Plaintiff's remaining arguments regarding the lay witness evidence or his RFC because, on remand, the ALJ should reconsider Plaintiff's subjective symptom testimony and the lay witness evidence as it pertains to the closed period from December 1, 2015, to February 1, 2018.

D. Award of Benefits

Lastly, Plaintiff argues that "[b]ecause [Plaintiff] satisfied all three parts of the credit-as-true test, and the record as a whole does not create serious doubt that [Plaintiff] was in fact disabled between December 1, 2015[,] and February 1, 2018, the Court should exercise its discretion and remand [Plaintiff]'s claim for the award of benefits." Dkt. 13 at 19.

Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Nonetheless, "[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). If an ALJ makes an error and "the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citation omitted). Similarly, if the Court concludes that "additional proceedings can remedy" the ALJ's errors, it should remand the case for further consideration. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (citation omitted).

The Ninth Circuit, however, has created a "test for determining when evidence should be credited and an immediate award of benefits directed[.]" *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Specifically, under this "credit-as-true" test, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Ninth Circuit emphasized in *Leon*, however, that even when each element of the credit-as-true test is satisfied, the district court, nonetheless, retains discretion to remand for further proceedings or for an award of benefits. *Leon*, 80 F.3d at 1045.

An ALJ's errors are relevant, however, only to the extent they impact the underlying question of the Plaintiff's disability. *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011). "A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Id.* Therefore, even if the "credit-as-true" conditions are satisfied, a court should

nonetheless remand the case if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021 (citation omitted).

In following the three-step inquiry, the Court finds the credit-as-true criteria have not been satisfied in this case. Although the ALJ has (1) failed to provide legally sufficient reasons for rejecting Plaintiff's evidence in the 2025 decision—there remain outstanding issues that must be resolved before a determination of disability can be made; specifically, whether Plaintiff experienced limitations in his mental functioning in the closed period due to his severe mental impairments, and the extent to which those limitations were disabling. Therefore, the proper disposition, at this stage, is to reverse and remand the matter to the administration for additional investigation or explanation as whether Plaintiff's severe mental impairments in the closed period from December 1, 2015, to February 1, 2018, were disabling.

## IV. Conclusion

Based on the foregoing reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED**.

Dated this 25th day of August, 2026.

David W. Christel
United States Magistrate Judge